UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| IDA M. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 1:06-cv-84 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| WAL-MART STORES EAST, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the Court is defendant Wal-Mart Stores East, L.P.'s ("Defendant's") motion for summary judgment (Court File No. 46). Plaintiff Ida M. Rogers ("Plaintiff") filed a response (Court File No. 50), and Defendant replied to this response (Court File No. 51). The parties have filed all necessary briefs, and this matter is now ripe for decision. For the following reasons the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 46).

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff worked for Defendant from April 16, 1999 to May 17, 2004 (Court File No. 50 at 1). On January 10, 2002, Plaintiff was stacking pallets for Defendant when one of the pallets started to fall (Court File No. 50, Ex. 1 "Pl.'s Dep." at 22-23). Plaintiff braced the pallet with her knee to prevent the pallet from falling (*id*.). After Plaintiff left work for the day, her knee started to swell, and the next day she reported her injury to her supervisor (*id*.). According to Plaintiff, her supervisor's reply was "get over it and deal with it and go back to work, and they were not going

to allow [her] to file a claim." (*Id.*).

Plaintiff suffered from a swollen joint, pain from her entire leg down to her foot, muscle spasms, and a constant pain in her knee (Pl.'s Dep. at 25). Plaintiff suffered two ruptured discs in her lower back near her sciatic nerve (*id*. at 27).

In April 2002, Plaintiff underwent her first surgical operation (*id* at 62). Her surgeon had to surgically realign the kneecap (*id*. at 24). The record clearly indicates there were subsequent surgical operations, but it is unclear as to how many operations, when they were performed, or of what nature. Albeit the record does reflect a second surgery took place in August 2005 (*id*. at 25).

Plaintiff was off work for 212 days in 2002 (Court File No. 50 Ex. 3), and only worked 48 days from January 1, 2003 to March 1, 2004 (Court File No. 50 Ex. 4). During these last two years of her employment, Plaintiff alleges she experienced hardship and insults constituting a course of harassment.

Plaintiff was released to return to light duty work in May 2002, and Plaintiff's supervisor Keith Kitchens ("Kitchens") told her he did not want to accommodate her injury and she should "stay home until [she] was ready to come back and earn [her] paycheck." (*Id*. at 38). Kitchens then assigned Plaintiff to work as a people greeter.

During winter, Kitchens moved Plaintiff close to an exit under an air-conditioning vent, turned the air conditioning on, propped the outside doors open, and told her she better not move from that position (*id*. at 63-64, 67). When Plaintiff turned the heat on in the break room another employee said if Plaintiff would get off of her rear and "work for a living like the rest of us, you wouldn't be cold." (*Id*. at 65). When Plaintiff complained to a supervisor the supervisor said she should just get used to it, and as soon as Plaintiff was released with no restrictions the supervisor

would "coach [her] out the door."  (*Id*. at 66).

Plaintiff also alleged her supervisor frequently told her she was worthless because of her restrictions (*id*. at 70).  And her employment was not fair when everybody else had to work for a living (*id*.).

According to Plaintiff, if an employee is injured in a store the other employees are not eligible for a stakeholder's bonus because of the cost of the injury (*id* at 75).  At a stakeholder meeting, the supervisor introduced Plaintiff by saying, "We won't be getting a stakeholder's bonus . . . [b]ecause we've had too many injured workers and each injured worker costs us $ 50,000.  And by the way, I'd like to welcome [Plaintiff] back from workers' comp leave."  (*Id*. at 76).

Eventually, Plaintiff was reassigned to the garden center (*id*. at 83).  Kitchens did not give her a chair with a back, but instead gave her a high stool which did not have a back and did not allow her feet to touch the floor, both accommodations Plaintiff required (*id*. at 83-84).  After Plaintiff objected to the stool the assistant manager brought over a lawn chair (*id*. at 86).  However, later while Plaintiff was on break the assistant manager replaced the chair with the stool before she left for the day (*id*. at 84).  When Plaintiff complained to the remaining supervisor, he put his hands over his ears, started shaking his head, and said, "Don't want to see it.  Don't want to hear it.  Don't want to know it."  (*Id*. at 85).  When Plaintiff persisted, her supervisor said the assistant manager told him Plaintiff was to "sit in the stool and to like it."  (*id* at 87).  Having thus reached an impasse, Plaintiff followed the advice of another employee, clocked out, and left to complain to Kitchens the next morning (*id*. at 88).

Initially, Kitchens refused any accommodation and said Plaintiff could go home, but if she went she "would be fired like everybody else."  (*Id*.).  Plaintiff called her husband who called her

doctor who called the store (*id*.). Her doctor told the store they needed to follow her restrictions because otherwise she would damage her knee (*id*.). After the call, Kitchens went to Plaintiff and said in his opinion she did not need an accommodation (*id*. at 89). Kitchens then made a spectacle of himself as he stacked metal buckets in front of the stool to a cacophonous effect (*id*.). His idea, apparently, was he would create a platform high enough so Plaintiff could sit on the stool with her feet resting on the buckets like a floor. He also instructed Plaintiff to lean against a chain link fence to compensate for the lack of a chair back. Plaintiff argues this still did not meet her needs because the chain link fence was too flexible, and the posture Plaintiff had to use to keep her feet on the buckets was uncomfortable (*id*. at 91-92).

Defendant finally supplied Plaintiff with a chair, but first removed the chair's arms (Pl's Dep. at 95). The arms prevented the back of the chair from going too far backwards (*id*.). When Plaintiff returned from a day off, she was told someone else broke the chair because they leaned too far backwards and the chair flipped over (*id*. at 96).

In February 2004, Plaintiff underwent a functional capacity examination ("FCE") at the request of her workers' compensation physician, Dr. Scott Hodges. (Court File No. 50 Ex. 5 at 15). The FCE indicated that Plaintiff's permanent, long-term restrictions included: lifting from hand to shoulder 20 pounds occasionally; lifting from floor to shoulder 15 pounds occasionally; carrying 15 pounds occasionally; pushing less than 40 pounds occasionally; pulling less than 40 pounds occasionally; sitting only 10-15 minutes; standing only 40 minutes; and walking only 10 minutes (*id*. at 16) Dr. Hodges adopted the FCE restrictions and forwarded them to Defendant (Court File No. 50 Ex. 6 at 35-40).

Plaintiff obtained the opinion of Mark Boatner ("Boatner") a vocational expert. Boatner

noted Dr. Hodges assigned restrictions substantially similar to a "light-strength rated job." (Court File No. 46 Ex. 6 at 28). Boatner also noted the FCE indicated Plaintiff should be restricted to sedentary strength positions, and even for those she would need a "sit/stand option." (*Id*.). Boatner himself ascribed "a 100% vocational disability rating because there are no jobs in the local or national economy in significant numbers that make provision for an employee to recline or lie down." (*Id*.).

On April 27, 2004, Plaintiff took her return to work notice into Kitchens. Kitchens, on reading the restrictions, said "[she] was worthless to Wal-Mart, and if [she were] a decent human being that [she] would just go ahead and quit." (Pl's Dep. at 136-37).

Following her final return to work in April 2004 (and until her date of termination), Plaintiff's employee identification badge did not work (*id*. at. 157-58). Thus, she could not clock in like the other employees (*id*. at 157). Instead, she was required to sign paper documents called time adjustments, which had to be authorized by a member of management (*id*. at 157). An Assistant Manager informed her that he been instructed by Mr. Kitchens not to key her back into the system as an active employee (*id*. at 157-58).

The last time that Plaintiff physically worked for Defendant was on the night of May 16, 2004. Following this evening, Plaintiff became dehydrated and was out of work for several days. On May 27, 2004, Plaintiff's husband went to the store to request leave of absence forms for Plaintiff (Court File No. 50 Ex. 7 at 20). He was informed that Plaintiff needed to call Kitchens (*id*.). When Plaintiff called Kitchens, he told her she was no longer employed at Wal-Mart (Pl's Dep. at 158). When Plaintiff inquired into why she had been fired, Kitchens' first explanation was that she was a "no-call/no-show" for several weeks (*id*. at 158). When Plaintiff stated that she had

in her possession signed time adjustments showing that she had worked, Kitchens became upset (*id.* at 158-59). He then gave a different reason, and said she had been sleeping on the job (*id.*).

Plaintiff alleges the conduct of Defendant violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"). Plaintiff filed this law suit on April 7, 2006 (Court File No. 3). Plaintiff originally appeared in this action pro se (*id.*). Defendant answered on May 22, 2006 (Court File No. 8). Plaintiff in her original complaint joined her supervisor and the two employees she claims falsely accused her of sleeping on the job, Kitchens, Tonya Martin, and Angela Moffett. These defendants filed motions to dismiss (Court File Nos. 13, 15, 22). Plaintiff obtained representation, and then Magistrate Judge William B. Mitchell Carter accepted an Amended Complaint filed by Plaintiff, but reserved judgment on whether to allow Plaintiff to add a jury demand (Court File No. 30). Defendant then answered the amended complaint, and District Judge Harry S. Mattice dismissed the defendants' various motions to dismiss Plaintiff's co-workers as moot because the amended complaint did not name them as defendants (Court File No. 32). This Court permitted plaintiff's motion to amend her complaint to include a jury demand (Court File No. 40). Defendant moved for summary judgment on November 30, 2007 (Court File No. 47). Plaintiff filed a response on January 7, 2008 (Court File No. 50), which Defendant replied to on January 14, 2008 (Court File No. 51).

## II.      ARGUMENTS OF THE PARTIES

### A.      Defendant's motion

Defendant argues all claims by Plaintiff should be dismissed for two reasons. First, Defendant argues Plaintiff cannot show she was a qualified individual with a disability as required

by the ADA. Defendant argues Plaintiff made representations in her claims for Social Security Disability Insurance ("SSDI") benefits and workers' compensation that preclude her from asserting she is a qualified person with a disability under the ADA.

Second, Defendant also argued any claim Plaintiff has for failure to accommodate under the ADA is time barred because Plaintiff failed to file the appropriate charge form with the Equal Employment Opportunity Commission within 300 days of the discriminatory conduct.

### B.    Plaintiff's Response

Plaintiff's response argued she could file for SSDI, workers' compensation, and the present suit under the ADA because neither SSDI nor the workers' compensation statutes take into account reasonable accommodations. Plaintiff argues she can work, but only if a job affords a reasonable accommodation for her disability. Therefore her case is one of the small number where a plaintiff can qualify for SSDI, workers' compensation, and protection under the ADA.

Plaintiff argued her failure to accommodate claim was part of a continuing course of conduct and so was timely.

Plaintiff also argued even if her failure to accommodate claim was not timely it was largely irrelevant as she still had her hostile work environment claim, which involves many of the same incidents.

### C.    Defendant's Reply

Defendant repeated its argument Plaintiff had failed to offer a reasonable explanation to allow her to pursue a workers' compensation claim, a SSDI benefits claim, and an ADA claim. Defendant also argued Plaintiff failed to plead a hostile work environment claim, and should not be allowed to add any such claim to her complaint at this late date.

## III.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).


## IV.    DISCUSSION

Defendant claims Plaintiff's previous representations in claims for workers' compensation

and SSDI benefits prevent Plaintiff from claiming she is a qualified person with a disability as required by the ADA. (Court File No. 47 at 3) Defendant argues Plaintiff's previous claims conflict with her present claim, and Supreme Court precedent bars her present action. In order to receive SSDI benefits an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable . . . impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to receive temporary total workers' compensation disability benefits the claimant must be "totally prevented from working" for the time period at issue. *Gluck Bros., Inc. v. Coffey*, 431 S.W.2d 756, 759 (Tenn. 1968). The ADA forbids discrimination against qualified individuals with a disability. 42 U.S.C. § 12112. To be a qualified person with a disability, a plaintiff must be able to perform her job with or without a reasonable accommodation. 42 U.S.C. § 12111(8). This leads to the appearance of a plaintiff who at the same time is claiming she is and is not too disabled to work.[1]

"[H]owever, despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). The two claims do not necessarily conflict in an individual case; for the SSDI definition of disabled does not take into account reasonable accommodations. *Id*. at 803. This leaves open the possibility, in an appropriate case, that a plaintiff can only satisfy the requirements of a job with a reasonable

---

[1]In addition to the above, outside some proof of a tribunal's reliance on Plaintiff's representation, *Cleveland's* prohibition would appear to have no effect. "If an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." *Id*. at 805. However, when the Sixth Circuit previously applied *Cleveland* it did so without considering whether the plaintiff had actually obtained benefits. *Williams v. London Util. Comm'n*, 375 F.3d 424, 428-29 (6th Cir. 2004).

accommodation, but without that accommodation the plaintiff cannot satisfy the requirements for any job. In such a case, the plaintiff would, by law, qualify for both protection under the ADA and for SSDI benefits.

The Supreme Court analogized this issue to the question whether contradictory affidavits or sworn testimony at the summary judgment stage could establish a genuine issue of material fact. *Id*. at 806. The Court required a plaintiff to offer an explanation "sufficient to warrant a reasonable juror's concluding that, assuming . . . the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions of her job, with or without 'reasonable accommodation.''" *Id*.

### A. Defendant Fails to Show Plaintiff's Statements are in Conflict.

Defendant claims Plaintiff's applications for SSDI benefits and workers' compensation prevent her from claiming she is a qualified individual with a disability as required by the ADA (Court File No. 47 at 3). The Supreme Court compared this seeming inconsistency to prior cases, which required an explanation from a party who has filed contradictory affidavits, or otherwise contradicted her previous sworn testimony to create a genuine issue of material fact. *Cleveland*, 526 U.S. at 806. But before this doctrine applies, Defendant must point to a contradictory statement, or in this case, a contradictory legal position. *See Bender v. Southland Corp*., 749 F.2d 1205, 1211 (6th Cir. 1984). There are only two documents filed with the Court from either Plaintiff's application for SSDI benefits or from Plaintiff's workers' compensation lawsuit (Court File No. 46 Ex. 5). Both documents on file are from Plaintiff's claim for workers' compensation, but only one was actually written or filed by Plaintiff.

The first document, a motion for the start of temporary total disability benefits, was filed on

September 27, 2007 (*id*.).  Plaintiff filed this document more than a year after she filed this action, and more than two years after her termination (Court File No. 1).  This motion indicates Plaintiff's "condition has worsened" and "she is required to have further treatment."  (Court File No. 46 Ex. 5).  The motion states Plaintiff "is currently unable to work, warranting a start of her temporary total disability benefits."  (*Id*.).  On its face, this document creates no inherent conflict with Plaintiff's current position in this case, which is she was able to work with reasonable accommodation in May 2004.  From the text of the motion, the most plausible reading of the document is Plaintiff is claiming benefits from the date of filing.  Plaintiff has failed to argue this so this construction is perhaps erroneous, but the motion itself is ambiguous.

The only statement to contradict Plaintiff's present position is the notation on the attached doctor's opinion, "[Plaintiff] was not able to work from 5-17-04 until December, 2007."  (*Id*.).  But its not clear Plaintiff is actually arguing for temporary total disability benefits from May 17, 2004 or for some other time period.  There is no request for a retroactive grant of benefits nor any indication what temporary period Plaintiff is asking for workers' compensation.

The second document is the Defendant's response to Plaintiff's motion to amend her complaint in the workers' compensation suit to add a claim for permanent total disability benefits related to a right knee injury (Court File No. 50 Ex. 13).  There is no indication whether this motion to amend was granted or not.  Nor any indication of the time frame for which Plaintiff is claiming permanent total disability benefits.  Plaintiff's right knee injury does not appear to be at issue in this action, all documents in the record for this action refer to Plaintiff's left knee (Court File Nos. 50 at 2, 50 Ex. 1 at 24).

There are absolutely no documents from the SSDI benefits request filed with the Court.  The

only information either party offers indicates the request "failed" (Court File No. 50 at 9), and Plaintiff represented the SSDI application covered a different time period (Court File No. 50 at 9-10). There is no representation before the Court or evidence of whether the SSDI claim is pending or whether Plaintiff has abandoned the claim.

In *Cleveland*, the plaintiff's positions presented a clear possibility of conflict. The Social Security Administration ("SSA") awarded benefits retroactive to the day of her injury. *Cleveland*, 526 U.S. at 798. The *Cleveland* plaintiff's injury occurred several months before the defendant terminated her, and both parties agreed any disability stemmed from the plaintiff's injury. *Id*. Only after the plaintiff asked the SSA to reconsider its position twice and presented new evidence did the SSA grant the retroactive benefits. Unlike *Cleveland*, Defendant has failed to point to any such contradiction, and so there is no requirement for Plaintiff to offer a reasonable explanation to survive summary judgment. The *Cleveland* plaintiff had affirmatively represented to the SSA she was unable to work for the period of time corresponding to the same period of time covered by her ADA claim.

The Court in this case has only been informed Plaintiff has filed an application for SSDI benefits and filed a suit for workers' compensation benefits in the nearly four years since she was terminated by Defendant. The SSDI benefits application appears to have failed, and the Court has no evidence whether Plaintiff is pursuing that claim or not.

In the workers' compensation suit the Court is entirely unaware of what Plaintiff has actually claimed as a disability or what level or time period for which Plaintiff claims to be disabled. The only filing Plaintiff wrote on record, merely asks for temporary total disability benefits. But both parties at some point discuss Plaintiff's claim she is permanently totally disabled rather than

temporarily totally disabled (Court File Nos. 47 at 4; 50 at 13).  It is possible Plaintiffs workers' compensation suit has added a claim for permanent total disability benefits, but there is no evidence to that effect nor is there any evidence from what date Plaintiff claims to be totally disabled.  It is possible that Plaintiff's position in the workers' compensation suit is squarely contradictory with Plaintiff's present position, but there is no evidence of this.

### B.  Plaintiff has Proffered a Reasonable Explanation for Her Two Different Claims

The Court has little or no information of the various claims Plaintiff has filed, but the parties do not appear to have alleged any factual inconsistencies.  The sole question then is whether Plaintiff can reconcile her two basic legal claims.  First, her previous claim she was both totally disabled for the purposes of the workers' compensations statutes, and she was unable to engage in any substantial gainful activity for the SSDI claim.  Second, she presently claims she was able, with reasonable accommodation, to perform the essential functions of a greeter for Defendant.

To reconcile Plaintiff's claims she must provide an explanation "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  *Cleveland*, 526 U.S. at 807.

Plaintiff argues her case is one of the few which qualifies under both statutes.  According to Plaintiff, neither the SSDI nor the workers' compensation scheme takes into account reasonable accommodations (Court File No. 50 at 12-13).  So a worker may be unable to engage in any substantial gainful activity and so qualify for SSDI benefits, but still have been able to perform the essential functions of their position because of a reasonable accommodation.  This was one of the reasons the Supreme Court in *Cleveland* rejected a presumption against allowing a suit like this to

proceed.

Plaintiff argues she qualifies for protection under both the ADA and the Tennessee workers' compensation statutes because the workers' compensation statutes do not take into account reasonable accommodations (Court File No. 50 at 12). There are no decisions on point discussing this issue. However, as one commentator has noted the definition of total disability "has not been strictly or harshly enforced." Thomas A. Reynolds, *Tennessee Workers' Compensation Practice & Procedure with Forms* § 14:9 (5th ed. 2001). And Plaintiff cites to at least one Tennessee Supreme Court case which implies the workers' compensation statute does not take into account reasonable accommodations. *Long v. Mid-Tenn. Ford Truck Sales, Inc.*, 160 S.W.3d 504, 511 (Tenn. 2005) (holding employee ineligible for total disability benefits without considering the possibility of a reasonable accommodation). This Court need not decide whether the Tennessee workers' compensation statutes consider a person totally disabled where they are only able to work at any job through a reasonable accommodation. It is enough to conclude the case law is unclear, and therefore Plaintiff may reasonably have a good faith belief a claimant can both qualify for workers' compensation total disability benefits and be a qualified individual with a disability under the ADA.

Of course it is not enough to merely point to the statutory difference. *Motley v. N.J. State Police*, 196 F.3d 160, 165 (3rd Cir. 1999). Rather, Plaintiff must show facts which demonstrates she has a good faith belief the exception applies in her case. For Plaintiff to satisfy this test she must show two things. First, that she has evidence such that a reasonable juror could believe she is able to work with a reasonable accommodation. Second, she must show evidence enough for a reasonable juror to find, but for that reasonable accommodation she is otherwise unable to work.

Plaintiff argues she was able to work with reasonable accommodation at Wal-Mart (Court File No. 50 at 11). The FCE noted Plaintiff did not quite meet the required demands of her current job (Court File No. 50 Ex. 5). The two areas the FCE indicated Plaintiff could not satisfy were lifting and greeting (*id.*), but the FCE also indicated so long as Plaintiff was allowed to alternate standing and sitting she could perform the greeting function. According to one of Defendant's employees, Angela Moffet, "as a people greeter, generally, you're not needing to lift anything." (Court File No. 20 Ex. 10 at 47). Therefore a reasonable juror could conclude the FCE indicates Plaintiff could perform the job of people greeter, but only with a reasonable accommodation.

The best evidence Plaintiff was able to perform her job with reasonable accommodation is the simple fact Defendant maintained her employment. And on the facts before the Court, Defendant has never claimed it fired her because she was incapable of performing the essential functions of her position; instead it fired her because she was sleeping on the job. There is sufficient evidence a reasonable juror could conclude Plaintiff can perform the essential functions of her job with reasonable accommodation.

The remaining question is whether there exists evidence Plaintiff requires a reasonable accommodation to be able to work at any job. Plaintiff procured an expert opinion on the extent of her vocational disability from Mark Boatner ("Boatner").[2] Boatner's opinion notes even if Plaintiff were able to secure a sedentary or light strength job she would still need a sit/stand option (Court File No. 46 Ex. 6 at 28). Therefore, Plaintiff's expert indicates even sedentary employment, the

---

[2]Defendant relies upon Boatner's statement Plaintiff "has a 100% vocational disability rating." However, Boatner makes it clear he ascribes the 100% disability rating because "there are no jobs in the local or national economy in significant numbers [which satisfy Plaintiff's restrictions.]" (Court File No. 46 Ex. 6 at 28). This has little to do with the matter at hand, whether Plaintiff could perform the essential duties of her position with reasonable accommodation.

lightest strength rating possible (*id.* at 21), would require some accommodation from the employer. Boatner estimated that only about one fourth of sedentary or light strength jobs might afford such an option. A reasonable juror could conclude Boatner's opinion indicates Plaintiff was in fact able to work, but only if reasonably accommodated through a "sit/stand option."

Plaintiff also argues the SSDI claim covers a different time period than the ADA claim (Court File No. 50 at 10). Defendant, in response, points to medical records where Plaintiff is quoted by her physicians as stating "she was unable to continue working." (Court File No. 51 at 6).

Defendant's reliance on *Cleveland* on this point is mistaken. The *Cleveland* Court repeatedly said they left the law governing factual issues as they found it, and explained the only conflict in the current case "involves a legal conclusion." *Cleveland*, 526 U.S. at 807. Defendant advances no particular argument Plaintiff cannot produce enough evidence to create a genuine issue of material fact, but instead relies on *Cleveland* and argues Plaintiff cannot prosecute her ADA claim because she previously claimed SSDI benefits and workers' compensation benefits. Defendant argues *Cleveland* forecloses Plaintiff's claim, and therefore the question is whether Plaintiff's legal positions conflict and not whether Plaintiff has given prior inconsistent statements.

Plaintiff has produced competent factual evidence her case fits into the exception which allows simultaneous claims for workers' compensation, SSDI, and the ADA, and therefore she has satisfied her burden under *Cleveland*.

Plaintiff also notes Defendant has taken a contrary position in both law suits and so should not benefit from summary judgment (Court File No. 50 at 14-15). Defendant protests it is merely holding Plaintiff to her burden of proof (Court File No. 51 at 5). However unless Defendant believes

the evidence rests in perfect equipoise Defendant's positions must conflict.

Defendant in this action largely relies on a contradiction between Dr. Dyer's opinion Plaintiff was not able to work from May 17, 2004 and Plaintiff's contention she is a qualified person with a disability within the meaning of the ADA when she was terminated on the same day (Court File No. 47 at 6-7. As Defendant argued in the workers' compensation lawsuit "[Dr. Dyer's opinion] did not indicate that Plaintiff met the statutory definition of permanently and totally disabled." (Court File No. 50 Ex. 13 at 4). Defendant in this case takes the position this attachment to Plaintiff's motion for reinstatement of benefits means Plaintiff claims she is totally disabled within the meaning of the statute, and apparently for the same time period as the doctor's notation (Court File No. 47 at 7). The Defendant in both cases is discussing precisely the same notation attached to Plaintiff's Motion to Reinstate Benefits.

Defendant, in combination, takes the position Dr. Dyer's opinion, as evinced in the attachment, is ambiguous and so Defendant may argue both interpretations in good faith. The opinion could mean Plaintiff is "not able to work," in the terms of Boatner's opinion, able to work at certain limited jobs with a sit/stand option but unable to find employment. The opinion could be descriptive and merely stating the fact Plaintiff was unable to procure a job over that time frame. The opinion could mean what Defendant in its present motion takes it to mean, which is Plaintiff was physically incapable of working at any sort of job. The Court agrees the statement is somewhat ambiguous, and finds a reasonable juror could believe Plaintiff in good faith filed a claim for workers' compensation, a claim for SSDI, and a claim for wrongful termination under the ADA.

### C. Accommodation Claim

Defendant next argues Plaintiff's failure to accommodate claim should be dismissed as time-

barred (Court File No. 47 at 10). Plaintiff in response argues the failure to accommodate claim is part of a continuing violation and therefore her charge to the EEOC was timely (Court File No. 50 at 17-18).

A Charge of Discrimination is timely only if it is filed within 300 days of the challenged action. *See* 42 U.S.C. § 12117(a) (incorporating Title VII procedural requirements into ADA); 42 U.S.C. § 2000e-5(e)(1); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837 n.5 (6th Cir. 1988). "The rejection of a proposed accommodation is a single completed action when taken." *Elmenayer v. ABF Freight Sys.*, 318 F.3d 130, 135 (2d Cir. 2003) (*cited in Hall v. The Scotts Co.*, 211 F.App'x 361, 363 (6th Cir. 2006)).

Plaintiff filed her charge of discrimination with the EEOC on January 4, 2005 (Court File No. 47 Ex. C). Therefore, counting backwards this charge can only cover those incidents which occurred on or after March 10, 2004.

Plaintiff admits she had no problems with how she was accommodated when she returned to work within the 300 day window (Pl's Dep. at 140-42). The Complaint alleges a failure to accommodate occurred in the Spring 2004 (Court File No. 25 Ex. 1), but Plaintiff's deposition places the time of this incident well before this (Pl's Dep. 83-88). Plaintiff's response to Defendant's Motion for Summary Judgment merely recounts a statement of Kitchens, "With your restrictions, you are worthless to Wal-Mart. If you were a decent human being, you would just go ahead and quit." (Court File No. 50 at 19).

Defendant correctly responds this statement by itself cannot sustain a claim for failure to accommodate. A reasonable accommodation refers to "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is

customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A mere statement of disdain, no matter how rude, does not establish a claim for failure to accommodate. As noted above, Plaintiff admits she had no complaints about her work environment within the 300 day limit (Pl's Dep. at 140-42).

Plaintiff does argue this statement is part of a continuing violation. However, as Defendant notes the Supreme Court has rejected this argument. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

> [A] plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period. . . . A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.

*Id*. Therefore, Plaintiff's failure to accommodate claim will be **DISMISSED** because Plaintiff did not file her charge with the EEOC within 300 days of Defendant's alleged failure to accommodate.

### D.      Hostile Work Environment Claim

Plaintiff argues her hostile work environment claim will survive, and include previous conduct related to the creation of a hostile work environment (Court File No. 50 at 19). Defendant argues Plaintiff failed to appropriately plead a hostile work environment claim (Court File No. 51 at 10-11). Plaintiff in her complaint only alleged discrimination as an actual count (Court File No. 25 Ex. 1 at 3). On these facts, whether this allegation properly pleads a claim for hostile work environment presents a close question.

A hostile work environment claim is nothing more than a particular type of discrimination claim. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Defendants, however argue merely alleging discrimination fails to give them fair notice of the nature of the claim (Court File

No. 51 at 11). Every complaint must contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint is intended to provide both fair notice of the nature of the claim, and also the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1965 n.3 (2007). "[L]egal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleadings." *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004). Of course bare assertions of legal conclusions are insufficient, and the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).[3]

The Supreme Court has rejected a requirement a plaintiff plead a particular theory of recovery. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002). A unanimous Court rejected the respondents argument "that allowing lawsuits based on conclusory allegations of discrimination to go forward will burden the courts and encourage disgruntled employees to bring unsubstantiated suits." *Id*. at 514. Instead, the Court held the plaintiff gave defendant fair notice of the basis of the claim because the complaint alleged plaintiff "had been terminated on account of his national origin . . . and age, [in violation of federal law. The complaint] provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id*.

Here the complaint in its recitation of the facts alleges her supervisor made numerous derogatory remarks about her disability (Court File No. 25 Ex. 1 at 2). Plaintiff further alleged these remarks constituted "harassment." (*Id*.). Plaintiff also alleged her supervisor intentionally removed

---

[3]Defendant does not appear to argue whether Plaintiff has alleged facts sufficient to sustain a hostile work environment. Rather Defendant rests on the argument Plaintiff failed to actually allege hostile work environment as a count separate from Plaintiff's discrimination claim.

a reasonable accommodation "to further humiliate Plaintiff and try to force her resignation." (*Id.* at 3). A plaintiff reasonably apprises a defendant of the basis of her complaint where she alleges a cause of action for "discrimination" and recites facts indicating she complains of severe harassment over an extended period of time for the purpose of making her quit.

In any event, this Court would allow Plaintiffs to amend the complaint to cure any deficiency. Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend pleadings with leave of the court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973). "[T]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided that such a shift in the thrust of the case does not work to the prejudice of the opposing party." *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983) (internal citations omitted).

Defendant does not explain why allowing Plaintiff to amend her pleadings would cause them any prejudice. Where Defendant has notice of the factual issue through the complaint, and cites no particular prejudice an amendment would be in the interests of justice.


## V.    CONCLUSION

For the foregoing reasons, this Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 46).

An Order shall enter.

**/s/**

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**